UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GEORGE MARVASO,
MARY MARVASO, and
GEORGE F. MARVASO,

    Plaintiffs,

v.

Civil Case No. 18-12442
Honorable Linda V. Parker

JOHN ADAMS,
MICHAEL J. REDDY JR. and
MICHAEL J. REDDY SR.,

    Defendants.
_____/

## **OPINION AND ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS**

    This civil rights action, filed pursuant to 42 U.S.C. § 1983, arises from a May 8, 2013 fire at a restaurant and pool hall in Westland, Michigan. In a First Amended Complaint filed February 6, 2019, Plaintiffs assert that Defendants conspired to violate their Fourth Amendment rights. The matter is presently before the Court on the following motions: (a) Defendants Michael J. Reddy, Jr. and John Adams' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(c) (ECF No. 24); and, (b) Defendant Michael Reddy Sr.'s motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) or for summary judgment under Rule 56. (ECF No. 25.) The motions have been fully briefed. Finding the facts and legal

issues sufficiently presented in the parties' briefs, the Court is dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f). For the following reasons, the Court is denying Defendants' motions.

**I.     Applicable Standard of Review**

As an initial matter, Defendant Michael Reddy Sr. ("Mr. Reddy") seeks dismissal of Plaintiffs' claim against him pursuant to Rule 12(b)(6) or, alternatively, Rule 56. Mr. Reddy attaches a single document to his motion that is a matter outside the Complaint: an affidavit from Michigan State Police Lieutenant Richard Sanchez dated October 30, 2018. The Court does not find it necessary to consider this document to decide Mr. Reddy's motion and, in any event, finds his request for summary judgment premature. *See CLT Logistics v. River West Brands*, 777 F. Supp. 2d 1052, 1076 (E.D. Mich. 2011) (quoting *Wells v. Corporate Accounts Receivable*, 683 F. Supp. 2d 600, 602 (W.D. Mich. 2010)) (noting that courts in this Circuit generally find motions for summary judgment filed before the close of discovery premature); *see also Vance By & Through Hammons v. United States*, 90 F.3d 1145, 1149 (6th Cir. 1995) (reversing summary judgment because "no discovery was conducted before the motion for summary judgment was filed and decided"). The Court is therefore reviewing Mr. Reddy's motion solely under Rule 12(b)(6)'s standard.

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). A Rule 12(c) motion for judgment on the pleadings is subject to the same standard of review as a Rule 12(b)(6) motion.[1] *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998).

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . .." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

As the Supreme Court provided in *Iqbal* and *Twombly*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678

---

[1] As Plaintiffs point out in response to Defendants Michael J. Reddy, Jr. and John Adams' Rule 12(c) motion, the motion is premature because it was filed before the pleadings closed. *See* Fed. R. Civ. P. 12(c); *F.R.C. Int'l, Inc. v. United States*, 278 F.3d 641, 642 (6th Cir. 2002). Defendants have not answered Plaintiffs' First Amended Complaint. In any event, courts oftentimes treat premature Rule 12(c) motions as motions filed under Rule 12(b)(6). *See, e.g., Horen v. Bd. of Educ. of Toledo*, 594 F. Supp. 833, 840 (N.D. Ohio 2009). This Court will do the same.

(quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This presumption is not applicable to legal conclusions, however. *Iqbal*, 556 U.S. at 668. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555). Ordinarily, the court may not consider matters outside the pleadings when deciding a Rule 12(b)(6) motion to dismiss. *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997) (citing *Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir. 1989)).

## II. Factual Background

The following facts are derived from Plaintiffs' Complaint.

On May 8, 2013, shortly before 8:15 a.m., a fire broke out in the kitchen of Marvaso's Italian Grille ("Marvaso's"), a restaurant located on Wayne Road in

4

Westland, Michigan. Plaintiffs George and Mary Marvaso leased and operated Marvaso's, as well as an adjacent pool hall and charity poker facility called Electric Stick. Their son, Plaintiff George F. Marvaso, was an employee of Electric Stick. No one was inside Marvaso's or Electric Stick when the fire broke out. Wayne-Westland Fire Department Firefighter Brian Woehlke died from smoke and soot inhalation while fighting the fire.

Officials from the Wayne-Westland Fire Department initially investigated the fire, refusing the Michigan State Police Department's offer to conduct the fire origin and cause investigation. The Wayne-Westland Fire Marshal, Plaintiff John Adams ("Fire Marshal Adams"), conducted an on-scene investigation which revealed no accelerants. Investigators who investigated the fire for the companies that insured the buildings' landlord and the tenant businesses classified the cause of the fire as "undetermined."

Between May 8, 2013 and June 30, 2013, the Michigan Occupational Safety and Health Administration ("MIOSHA") investigated Woelke's death, conducting its "closing conference" with Wayne-Westland Fire Department officials on the latter date. The Fire Chief for the Wayne-Westland Fire Department at the time was Defendant Michael J. Reddy Jr. ("Fire Chief Reddy").[2] During the meeting between MIOSHA and the city's fire department officials, MIOSHA indicated that

---

[2] Fire Chief Reddy is currently the Deputy Mayor for the City of Westland.

5

it would be issuing citations to the fire department for safety violations resulting in Woelke's death. On August 30, 2013, MIOSHA issued a citation to the City of Westland for a "serious" violation of health and safety regulations. The City subsequently acknowledged the citation and agreed to pay the $3,500 penalty assessed against it.

During the Summer of 2013, Mr. Reddy invited Sunday Gains to lunch. Mr. Reddy is the father of Fire Chief Reddy and was previously the Fire Chief for the Westland Fire Department. According to the initial complaint Plaintiffs filed in this case, Sunday Gains is the daughter of George and Mary Marvaso and was an employee of Electric Stick.[3] During their meeting, Mr. Reddy "leaned over and told Ms. Gains 'You know I would do anything to protect my family.'" (Am. Compl. ¶ 35.)

Mr. Reddy, Fire Chief Reddy, and Fire Marshal Adams had one or more conversations between June 27, 2013 and early September 2013, at which time "they agreed that the best way to deflect attention away from the Westland Fire Department's role in causing the tragic death of firefighter Brian Woelke would be to conclude that the fire was intentionally set and not the result of an accidental, natural, or undetermined cause." (Am. Compl. ¶ 37.) Plaintiffs allege that

---

[3] Ms. Gaines was initially named as a plaintiff in this lawsuit. She is not included as a party, however, in the First Amended Complaint.

Defendants "agreed and expected that law enforcement would turn their attention toward the plaintiffs as the primary suspects in the case." (*Id.*) Further, "[D]efendants conspired to change the cause [of the May 8, 2013 fire] to 'incendiary' to ward off criticism of the Wayne-Westland Fire Department's leadership's [deficiencies as cited by MIOSHA] that resulted in the tragic loss of a young firefighter's life." (Am. Compl. ¶ 38.) Plaintiffs claim that the conspiracy between Defendants "was designed to shift blame away from the fire department's inadequacies and gross negligence, and to shift the focus of a criminal investigation to Plaintiffs." (*Id.* ¶ 46.)

Fire Marshal Adams met with Westland City Council member Bill Johnson in or about mid-September 2013. While Fire Marshal Adams previously told Council Member Johnson that the cause of the fire was electrical in nature, he now indicated that he was changing his conclusion to an incendiary cause even though he had no new evidence. When Council Member Johnson asked Fire Marshal Adams why he was changing his mind, Fire Marshal Adams answered: "Because a firefighter died, Bill." (*Id.* ¶ 39.)

In mid-November 2013, Fire Marshal Adams submitted an alleged false fire origin and cause report to the Michigan State Police ("MSP") and Wayne County Prosecutor's Office, which triggered an MSP homicide investigation resulting in search warrants being executed for Plaintiffs' homes. Fire Marshal Adams'

7

announcement that the fire had an incendiary cause and that the Michigan State Police would be opening a homicide investigation into Woelke's death was widely reported in the statewide news media.

As of the date Plaintiffs filed their Amended Complaint in this action, however, no arrests had been made in connection with the fire.

## III. Defendants' Arguments for Dismissal

Mr. Reddy seeks dismissal of Plaintiffs' § 1983 claim against him, arguing first that he did not act under color of state law. Mr. Reddy next argues that Plaintiffs' First Amended Complaint fails to allege facts showing that he deprived them of any constitutional right. Mr. Reddy points out that Plaintiffs do not allege that he personally applied for the search warrants, searched their homes, or seized their property. While Plaintiffs allege that Mr. Reddy conspired to change the fire report's conclusion and cause a police investigation, he argues that Plaintiffs allege insufficient facts to support the assertion.

Fire Marshal Adams and Fire Chief Reddy similarly argue that Plaintiffs' First Amended Complaint fails to plead sufficient facts to support their conspiracy claim. They contend that Plaintiffs' allegations are vague and conclusory,

unsupported by material facts. Fire Marshal Adams and Fire Chief Reddy also argue that they are entitled qualified immunity.[4]

## IV. Applicable Law and Analysis

Qualified immunity shields government officials acting within the scope of their official duties from civil liability insofar as their conduct does not violate clearly established rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1982). A two-step inquiry is used to decide whether an officer is entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001). First, taken in the light most favorable to the plaintiff, the court must decide whether the facts alleged show that the officer's conduct violated a constitutional right. *Id*. at 201. Second, if the facts do show the violation of a constitutional right, the court must determine whether the right was clearly established. *Id*.

A plaintiff alleging a claim under § 1983 "must demonstrate a deprivation of a right secured by the Constitution or laws of the United States caused by a person acting under color of state law." *Westmoreland v. Sutherland*, 662 F.3d 714, 718 (6th Cir. 2011) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)). Generally, private parties are not state actors unless their actions are "fairly attributable to the state."

---

[4] Fire Marshal Adams and Fire Chief Reddy additionally argue that Plaintiffs' conspiracy claim is deficient to the extent brought pursuant to 42 U.S.C. § 1985. Plaintiffs indicate in response that they are not asserting such a claim.

9

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982); *Black v. Barberton Citizens Hosp.*, 134 F.3d 1265, 1267 (6th Cir. 1998).

The Sixth Circuit Court of Appeals recognizes three tests for determining whether a private party's conduct is fairly attributable to the state: the public function test, the state compulsion test, and the nexus test. *Am. Postal Workers Union, AFL-CIO v. City of Memphis*, 361 F.3d 898, 905 (2004) (citing *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992)). In summary,

> [t]he public function test requires that the private entity exercise powers which are traditionally exclusively reserved to the state. The state compulsion test requires proof that the state significantly encouraged or somehow coerced the private party, either overtly or covertly, to take a particular action so that the choice is really that of the state. Finally, the nexus test requires a sufficiently close relationship between the state and the private actor so that the action taken may be attributed to the state.

*Id*. (quotation marks and internal citations omitted). A private party that has conspired with state officials to violate constitutional rights also qualifies as a state actor and may be held liable under § 1983. *Moore v. City of Paducah*, 890 F.2d 832, 834 (6th Cir. 1989); *Hooks v. Hooks*, 771 F.2d 935, 943 (6th Cir. 1985). Plaintiffs allege that Mr. Reddy, a private party at the time, conspired with Fire Marshal Adams and Fire Chief Reddy, state actors, to violate Plaintiffs' constitutional rights. To the extent Plaintiffs adequately allege facts to support

their conspiracy claim, the Court finds that Mr. Reddy qualifies as a state actor and may be held liable under § 1983.

Establishing a conspiracy under § 1983 requires proof "that (1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the plaintiffs of their constitutional rights, and (3) an overt act was committed." *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007). "Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy." *Hooks*, 771 F.2d 944. Further, "[e]ach conspirator need not have known all of the details of the illegal plan or all of the participants involved." *Id*.

"Although circumstantial evidence may prove a conspiracy, 'it is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983.'" *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 563 (6th Cir. 2011) (quoting *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003)) (additional citations and brackets omitted). The Sixth Circuit Court of Appeals has described "[t]hat pleading standard" as "'relatively strict.'" *Id*. (quoting *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008)). "Legal conclusions that are 'masquerading as factual allegations' will not suffice." *Id*. at 564 (quoting *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 276 (6th Cir. 2010)) (additional citation omitted).

This Court finds Plaintiffs' factual allegations of a conspiracy to be more specific than the allegations in the cases cited by Defendants and which the Sixth Circuit has found insufficient. Plaintiffs allege that a single plan existed: to draw attention from the Wayne-Westland Fire Department's deficiencies that resulted in Woelke's death by suggesting that Plaintiffs intentionally set the fire and triggering a criminal investigation of Plaintiffs. (*See, e.g.*, Am. Compl. ¶¶ 37, 38, 46.) They allege that the conspirators shared in the general conspiratorial objective: to deflect attention from the fire department's role in causing Woelke's death. (*Id.*) Finally, Plaintiffs allege an overt act committed in furtherance of the conspiracy: Fire Marshal Adams submitting a false fire origin and cause report that concluded the fire had an incendiary cause. (*Id.* ¶¶ 42, 45.) Defendants nevertheless argue that they did not engage in the conduct that deprived Plaintiffs of their alleged constitutional rights—that being the right to be free from searches and seizures of their property without probable cause.

Section § 1983, by its express language, provides a cause of action against a state actor who deprives or *causes* an individual to be deprived of his or her constitutional rights:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or *causes to be subjected*, any citizen ... the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper

proceeding for redress.

42 U.S.C. § 1983 (emphasis added). Thus, "an official can be held liable if he wrongfully instigates events which lead to a deprivation of constitutional rights[.]" *Hansen v. Williamson*, 440 F. Supp. 2d 663, 669 (E.D. Mich. 2006) (Roberts, J.). "'The requisite causal connection is satisfied if the [official] set[s] in motion a series of events that the [official] knew or should reasonably have known would cause others to deprive the plaintiff of [his] constitutional rights.'" *Id.* (brackets in original) (quoting *Conner v. Reinhard*, 847 F.2d 384, 397 (7th Cir. 1988); *see also Tidwell v. Schweiker*, 677 F.2d 560, 569 (7th Cir. 1982), *cert. denied*, 461 U.S. 905 (1983); *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978).

Under Sixth Circuit precedent, a § 1983 claim requires the defendant's conduct to be the cause in fact and the proximate cause of the plaintiff's injury. *Powers v. Hamilton Cty. Public Defender Comm'n*, 501 F.3d 592, 608 (6th Cir. 2007). "'Conduct is the cause in fact of a particular result if the result would not have occurred but for the conduct. Similarly, if the result would have occurred without the conduct complained of, such conduct cannot be a cause in fact of that particular result.'" *Id.* (quoting *Butler v. Dowd*, 979 F.2d 661, 669 (8th Cir. 1992)). Here, Plaintiffs assert that Fire Marshal Adams' submission of a false fire origin and cause report to MSP and the Wayne County Prosecutor's Office triggered the homicide investigation. Stated differently, had Fire Marshal Adams

13

concluded that the fire was accidental or that the cause was undetermined (as he originally did), no criminal investigation would have been initiated.

"[C]ourts have framed the § 1983 proximate-cause question as a matter of foreseeability, asking whether it was reasonably foreseeable that the complained of harm would befall the § 1983 plaintiff as a result of the defendant's conduct." *Id*. at 609. "Even if an intervening third party is the immediate trigger for the plaintiff's injury, the defendant may still be proximately liable, provided that the third party's actions were foreseeable." *Id*. (citations omitted). At this stage of the proceedings, based on the facts in Plaintiffs' First Amended Complaint, a reasonable jury could find it foreseeable that search warrants would be sought relying on Fire Marshal Adams' alleged false report in connection with the criminal investigation.

Having concluded that Plaintiffs' First Amended Complaint sufficiently pleads a civil conspiracy claim under § 1983 against Defendants, the Court turns to the second prong of the qualified immunity analysis: whether the constitutional right that was allegedly violated was clearly established at the time of the violation. *Saucier, supra*. Prior to 2013—when Defendants allegedly agreed to deflect attention from the fire department's deficiencies to Plaintiffs by falsely reporting that the fire was incendiary—it was well established that knowing fabrication of evidence violates constitutional rights. *See Mills v. Barnard*, 869 F.3d 473, 486

(6th Cir. 2017) (citing *Gregory v. City of Louisville*, 444 F.3d 725, 744 n.8 (6th Cir. 2006)); *see also Hansen*, 440 F. Supp. 2d at 673 (finding that a reasonable person would have known in 2004 that instigating a false arrest violates an individual's clearly established Fourth Amendment rights).

For these reasons, the Court concludes that Plaintiffs plead sufficient facts to support their § 1983 claim against Defendants and that Defendants are not entitled to qualified immunity.

Accordingly,

**IT IS ORDERED** that Defendants Michael J. Reddy Jr. and John Adams' motion to dismiss (ECF No. 24) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Michael Reddy Sr.'s motion to dismiss (ECF No. 25) is **DENIED**.

**IT IS SO ORDERED.**

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: July 10, 2019